NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2779
_____

LULJETA PELLUMBI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A075 955 156)
Immigration Judge:  Honorable Annie S. Garcy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 21, 2012

Before:  SCIRICA, VANASKIE and COWEN, Circuit Judges

(Filed: November 30, 2012 )
_____

OPINION OF THE COURT
_____

PER CURIAM.

        Luljeta Pellumbi, a native and citizen of Albania, petitions for review of an order

of the Board of Immigration Appeals ("BIA" or "Board"), which denied her motion to

reopen her removal proceedings.  We will deny the petition for review.

I.

Pellumbi entered the United States in 1997. She applied for asylum and withholding of removal based on her claims that she was arrested, beaten, and raped for her political activities. An Immigration Judge ("IJ") denied her application in October 1998. The BIA affirmed the IJ's decision without opinion in June 2002. In 2005, Pellumbi applied for reopening to renew her application for asylum and withholding based on deteriorating conditions in Albania and to submit evidence that her husband, an Albanian and the father of their two United States citizen children, was granted asylum in 1997. The BIA granted the motion.

Pellumbi reapplied for asylum and withholding of removal, and included a claim under the Convention Against Torture ("CAT"). The IJ denied relief, finding that she lacked credibility, and that even if she were credible, her claims for asylum would fail because the Department of Homeland Security ("DHS") submitted evidence showing that conditions in Albania had changed. See 8 C.F.R. § 1208.13(b)(1)(i), (b)(1)(ii) (if asylum seeker establishes past persecution, DHS can show changed conditions to rebut presumption of a well-founded fear of persecution). On December 23, 2008, the BIA affirmed, but did not adopt the IJ's credibility determination. Assuming Pellumbi to be credible, the BIA stated that she had established past persecution in Albania on account of her political support for the Democratic Party. However, it agreed with the IJ that the evidence of changed political conditions in Albania rebutted the presumption of a well-founded fear of persecution in the future.

2

Pellumbi filed a motion to reopen on March 29, 2011, over two years after the BIA's decision. Pellumbi based her motion to reopen on deteriorating conditions for women and children in Albania, and her fear that her daughters would be kidnapped there. The BIA noted that Pellumbi did not show that her children must return to Albania with her, because they are United States citizens and her husband is a lawful permanent resident. Further, the BIA found that the record did not show a material change in Albania regarding the sex trafficking trade since Pellumbi's 2007 hearing.

Pellumbi also filed a motion for reissuance in May 2011, claiming that neither she nor her prior counsel had received the BIA's 2008 decision. She asked that the BIA reissue its decision so that she could file a timely petition for review in this Court. The BIA reviewed the record and found that the December 2008 decision was mailed to Pellumbi's counsel at the address provided by counsel. The BIA noted that there was no evidence in the record that prior counsel changed her address, nor did that attorney submit an affidavit stating that she never received the decision. The BIA denied both motions on June 13, 2011. Pellumbi filed a timely petition for review of that decision.

II.

Because Pellumbi did not file a petition for review of the December 2008 decision, we may only review the Board's June 13, 2011 decision. See Nocon v. I.N.S., 789 F.2d 1028, 1032-33 (3d Cir. 1986) (final deportation orders and orders denying motions to reconsider are independently reviewable; a timely petition for review must be filed with respect to the specific order sought to be reviewed). We review a decision denying a

3

motion to reopen for abuse of discretion. <u>Lu v. Ashcroft</u>, 259 F.3d 127, 131 (3d Cir. 2001). A motion to reopen generally must be "filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). Pellumbi's motion was filed beyond the 90 days. However, as the BIA noted, there is an exception to the time requirements for motions to reopen if the movant shows "changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. §§ 1003.2(c)(2), (c)(3)(ii).

Pellumbi asserts that conditions in Albania have deteriorated since her hearing, that political tensions have increased since the 2009 parliamentary elections, and that kidnappings of women and children for sex trafficking have also increased. She references a report by Dr. Williams, an expert on country conditions in Albania, which states that the 2009 elections sparked a number of political killings and civil unrest. The report also states that Pellumbi's past persecution and lack of clan protection will make her daughters particularly vulnerable in a country that is already the world's leading "exporter" of kidnapped/forced prostitutes.

The BIA did not err in concluding that Pellumbi's daughters do not have to return to Albania with her. They are United States citizens and their father is a lawful permanent resident. <u>See</u> <u>In re A-K-</u>, 24 I. & N. Dec. 275, 277-78 (BIA 2007) (eligibility for withholding of removal could not be based on fear that two United States citizen

4

daughters would be forced to undergo female genital mutilation in Senegal); see also

Oforji v. Ashcroft, 354 F.3d 609, 615-16 (7th Cir. 2003) (same). Pellumbi recognizes

that she cannot gain relief based solely on the possibility that her children might be

harmed. But she argues that her case is distinguishable, because she also fears harm to

herself. She argues that the BIA ignored her claims that she fears for her own safety. We

disagree. The BIA held that the evidence Pellumbi submitted regarding "the trafficking

of *women* and children does not reflect a material change in circumstances" from

conditions at the time of her 2007 hearing. A.R. 4 (emphasis added). The BIA compared

news articles and the State Department's 2009 Human Rights Report for Albania

submitted by Pellumbi (A.R. 96-169) with the portions of previous country reports

submitted for the earlier proceedings (A.R. 613-721 (reports for 1996-2004), 400-01

(2006), 419-20 (2005)). The BIA reasonably found that Pellumbi's background materials

on Albania show that human rights abuses in Albania persist, but have not materially

changed since her 2007 hearing. Indeed, many of the articles Pellumbi provided with her

motion to reopen are either dated before 2007, or reference trafficking that occurred

before 2007.[1]

  Pellumbi argued the BIA ignored not only her fears of being a victim of sex

trafficking, but also her fears of persecution because "the political climate in Albania has

---

[1] Pellumbi complains that the BIA failed to discuss Dr. Williams' report. However, because that report focused on the harm that might befall her children, and because the report does not show changed country conditions since 2007, there was no need for the BIA to discuss the evidence.

become extremely volatile . . . and the government is virtually non functioning." Pet. Br. at 15. Of course, "general conditions of civil unrest or chronic violence and lawlessness . . . generally [are] not sufficient to permit the Attorney General to grant asylum . . . ." Konan v. Att'y Gen., 432 F.3d 497, 506 (3d Cir. 2005) (internal citations and quotation omitted). Further, although Pellumbi's motion to reopen references increasing "political strife and instability in the government," A.R. 22, and her declaration in support of her proposed asylum application states that she will be "especially vulnerable" because of her past involvement with the Democratic Party, A.R. 74, we do not fault the BIA for failing to read into these statements a separate claim of future political persecution.[2]

Like the denial of a motion to reopen, the denial of a motion to reissue is reviewed for abuse of discretion. Jahjaga v. Att'y Gen., 512 F.3d 80, 82-83 (3d Cir. 2008). We will not overturn such a denial unless it was "arbitrary, irrational, or contrary to law." Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004). Jahjaga involved two consolidated appeals in which the petitioners claimed they did not receive the BIA's final orders. The BIA decision in each case stated only that its prior decision had been "mailed to the address provided by counsel on a Notice of Entry of Appearance before the Board," and that there was "no error attributable to the Board in the service of its decision to counsel."

---

[2] Pellumbi also argues that she was deprived of due process because the BIA failed to make an individualized determination in her case. Relying on our decision in Zheng v. Attorney General, 549 F.3d 260 (3d Cir. 2008), she contends that BIA "dismissed critical information provided in the motion," and failed to reach the level of analysis required by Zheng. As discussed above, we find that the BIA properly considered the relevant

512 F.3d at 82. In Jahjaga, we noted that an alien who presents the BIA with an affidavit claiming that he or she did not receive a BIA decision "may well have provided enough evidence to rebut the presumption of mailing which attaches to the presence of a transmittal cover letter in the administrative record." 512 F.3d at 86. However, we "decline[d] to decide that question in the first instance," and instead remanded to the BIA "to determine what weight to accord to the claims of non-receipt of its opinions" presented by the petitioners, "and to explain the reasoning and analysis it employs in reaching its decision." Id.

Here, the BIA considered Pellumbi's sworn declaration that she did not receive the decision, and that her prior attorney "informed [her] that her office never received a copy of the decision either" (A.R. 7-8), but declined to reissue the decision because: (1) the decision was properly mailed to Pellumbi's counsel at her address provided on her Notice of Entry of Appearance; (2) the record showed that Pellumbi's counsel had sent a request for extension of the briefing period from that same address; (3) there was no indication that the decision was returned as undeliverable; and (4) Pellumbi's counsel never reported a change of address nor filed a request to withdraw her representation. A.R. 3. The BIA also noted that Pellumbi did not submit an affidavit from her prior counsel stating that she never received the prior decision. The BIA stated that "without a statement of non-receipt from the attorney to whom it was properly mailed," it was not

---

evidence that Pellumbi submitted. Thus, Pellumbi was not denied an individualized determination. See Jarbough v. Att'y Gen., 483 F.3d 184, 190 (3d Cir. 2007).

persuaded to reissue its decision.  Id.  In contrast to the decisions underlying Jahjaga, the BIA carefully considered Pellumbi's affidavit, and explained its reasons for declining to exercise its discretion in reissuing its decision.  We do not find that its decision to deny reissuance was "arbitrary, irrational, or contrary to law."

For the foregoing reasons, we will deny the petition for review.